## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Judy A. Hockbein,

        Plaintiff,

vs.

Ramsey County; Pine County; Correctional
Officer J. Doe, Ramsey County employee,
the identity of whom is presently unknown
to Plaintiff, in her individual and official
capacities; and Denise Christiansen and
Jami Tuve, Pine County employees, in their
individual and official capacities,

        Defendants.

Court File No.


**COMPLAINT WITH
JURY DEMAND**

### INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution and under the common law of the State of Minnesota, against Pine County, Ramsey County, and their employees, in their individual and official capacities.

2. It is alleged that the Defendants violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and committed torts under Minnesota state law.

### JURISDICTION

3. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343, and on the pendent jurisdiction of this Court to entertain claims arising under state law pursuant to 28 U.S.C. § 1367.

## VENUE

4.   This Court is the proper venue for this proceeding under 28 U.S.C. § 1391, as the material events and occurrences giving rise to Plaintiff's cause of action occurred within the State of Minnesota.

## PARTIES

5.   Plaintiff Judy A. Hockbein was at all material times a resident of the State of Minnesota, and of full age.

6.   Defendant Ramsey County is a municipal corporation and the public employer of Defendant J. Doe. Defendant Ramsey County is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials.

7.   Defendant Pine County is a municipal corporation and the public employer of Defendants Christiansen and Tuve. Defendant Pine County is sued directly and also on the theories of respondeat superior or vicarious liability and pursuant to Minn. Stat. § 466.02, for the actions of its officers and officials.

8.   Defendant Correctional Officer J. Doe was at all times relevant to this complaint duly appointed and acting officer of Defendant Ramsey County, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Minnesota and/or Ramsey County. Defendants J. Doe is being sued in her individual and official capacities.

9.   Defendants Christiansen and Tuve were at all times relevant to this complaint duly appointed and acting officers and/or officials of Defendant Pine County, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the

State of Minnesota and/or Pine County. Defendants Christiansen and Tuve are being sued in their individual and official capacities.

## FACTS

10. In 2016, Plaintiff Judy Hockbein was charged with disorderly conduct in Pine County, MN, Court File No. 58-CR-16-614. After some negotiations with the prosecutor, Ms. Hockbein was offered to resolve the criminal matter through a stay of adjudication with six months of unsupervised probation with Pine County and payment of $100 to cover court/prosecution costs. After some consideration, Ms. Hockbein accepted the prosecutor's offer.

11. Ms. Hockbein was sentenced on December 12, 2016. Per the negotiated plea deal, Ms. Hockbein was placed on unsupervised probation with Pine County for six months and probation was set to expire on June 12, 2017. Ms. Hockbein was also ordered, as a condition of probation, to pay the $100 costs payment by June 12, 2017. The actual language from the sentencing order, which is dated December 12, 2016, reads as follows: "The Defendant . . . [s]hall pay the financial obligations by 6 months." No payment schedule was set for the fine and Ms. Hockbein was simply ordered to pay the fine in full by June 12, 2017. Ms. Hockbein understood that she was required to pay the $100 by June 12, 2017, and intended to make the payment before the due date imposed by the court. Other conditions of probation were to remain law abiding and report changes in contact information to probation.

12. On June 30, 2016, the Pine County Defendants sent Ms. Hockbein a letter. The subject of the letter states, "**RULES OF PROBATION – UNSUPERVISED PROBATION**," (emphasis in original), and the document also contains a prominent text box stating "**PLEASE READ CAREFULLY**," (emphasis in original). The very last paragraph of the letter reads as

follows, "The Court also ordered some **SPECIAL CONDITIONS** for you to complete. . . . Pay a court ordered fine of $100 in full by 6/12/17 . . .,) (emphasis in original).

13. On April 13, 2017, the Pine County Defendants sent Ms. Hockbein another letter, entitled, "**PROBATION REVIEW**," (emphasis in original),which had another document attached to it, entitled, "**OPEN CASES AND CONDITIONS** for Judy Ann Hockbein," (emphasis in original). The "Probation Review" letter directed Ms. Hockbein to review the attached "Open Cases and Conditions" document and to "take care of any outstanding obligations immediately." The "Open Cases and Conditions" document, in turn, stated, in part, the following:

> Condition: Fines and Fees
> Start Date: 12/12/2016          Due Date: 6/12/2017
> Financial Balance: $100.00
> Comment: Court Costs Only: $100.00 by 6/12/17--SAJ

14. Ms. Hockbein had not yet paid the $100 costs payment in April of 2017 because it was not due until June 12, 2017. Ms. Hockbein understood the Pine County Defendants' April 13, 2017, mailing as confirming that she was required to pay the $100 costs payment by June 12, 2017, as was ordered by the court as part of her sentence.

15. On June 8, 2017, which was four days prior to the June 12, 2017, due date, Ms. Hockbein made a $200 payment to Pine County Court Administration. The payment was properly docketed as part of Court File No. 58-CR-16-614, and an "Official Receipt" was issued. The "Official Receipt" indicates that Ms. Hockbein paid a total of $200 - $100 for "Public Defender Reimbursement" and another $100 for "Court Costs Only." The receipt also identifies Ms. Hockbein as the "Payor" and lists the "Transaction Date" as "06/8/2017." In addition to making the timely payment, Ms. Hockbein also complied with all other

conditions of probation and court orders. On June 13, 2017, Ms. Hockbein assumed that she had completed her sentence and was off probation.

16. Prior to June of 2017, Defendant Pine County maintained a policy and/or practice and/or custom designed to ensure that criminal defendants pay off court ordered fines before expiration of probation. Upon information and belief, pursuant to this policy/practice/custom, Pine County would file a probation violation report for any person who failed to pay off his/her court ordered fine within approximately 30 days of expiration of probation.

17. Pine County applied the above-referenced policy even to individuals such as Ms. Hockbein who were not required to make payments while on probation but were only required to pay off the fine prior to expiration of probation. Even though no violation had occurred due to non-payment prior to expiration of probation, Pine County employees, pursuant to this policy, would violate the individual anyway by filing a probation violation report falsely stating that the individual had failed to abide by conditions of probation. This, in turn, would automatically generate a probation violation hearing with the court and the violated individual would be required to show up for court to answer to the false violation.

18. Pine County probation enforced the above-referenced policy/practice/custom of filing false probation violation reports to ensure that individuals who owed fines and were approaching expiration of probation would pay off their fines before probation expired. As noted above, Pine County applied this policy even to individuals who were not ordered to make payments and were only required to pay off the fine before the last day of probation. Thus, pursuant to this policy, upon information and belief, Pine County employees would routinely file false probation violation reports knowing that the report was false and that the subject individual had not violated the terms of his/her probation.

19. Since Ms. Hockbein had not yet paid off her court-ordered payment by May 12, 2017, Defendants Christiansen and Tuve, pursuant to the above-referenced policy/practice/custom, filed a false probation violation report against Ms. Hockbein on May 17, 2017. The report contained a section entitled "**ALLEGED VIOLATION**," (emphasis in original), and the alleged violations were listed in the report as follows: "1. Failure to pay court ordered fine[,]" and "2. Failure to cooperate with probation." The probation violation report further stated, "The defendant was sentenced on 12/12/2016 and given a stay of adjudication with the condition of paying 100 dollars in court costs. A letter was sent to the defendant on 4/13/17 reminding her of outstanding conditions. As of today, no contact had been made with probation and no payment has been made." The Defendants signed the probation violation report "under penalty of perjury."

20. The Defendants' allegations as set forth in the probation violation report were blatantly and knowingly false. Defendants knew that Ms. Hockbein was not required to pay the court-ordered payment until June 12, 2017, yet they filed their report on May 17, 2017, almost a month prior to the actual due date, alleging a "failure to pay." Defendants furthermore knew that Ms. Hockbein had no obligation to make "contact" with probation, and no such "contact" was ordered or required by the court or probation. The April 13, 2017, letter referenced in the probation violation report similarly contained no obligation for Ms. Hockbein to contact probation. Pursuant to the Pine County Defendants' above-referenced policy/custom/practice, Pine County Defendants filed a false probation violation report against Ms. Hockbein, and the Pine County Defendants knew that the alleged violations were false at the time the report was filed.

21. As a result of the Pine County Defendants' false probation violation report, on May 19, 2017, the court scheduled a probation violation hearing for June 23, 2017. However, Ms. Hockbein was not provided notice of this hearing and did not know anything about the Defendants' probation violation report being filed or the hearing being scheduled. When Ms. Hockbein paid the court-ordered payment on June 8, 2017, she still knew nothing of the alleged probation violation or the hearing scheduled for June 23, 2017. Even though Ms. Hockbein paid the court-ordered payment before the required due date and before the scheduled probation violation hearing, Pine County Defendants intentionally took no action in response to this information. Even though no probation violation had occurred and even though Ms. Hockbein satisfied the conditions of probation and was no longer on probation as of June 13, 2017, the Pine County Defendants failed to withdraw their false probation violation report or cancel the probation violation hearing scheduled for June 23, 2017.

22. Because Ms. Hockbein did not receive notice of the June 23, 2017, hearing and was not advised of the hearing by the Pine County Defendants, she did not appear for the hearing. The Pine County Defendants knew that, as of June 13, 2017, Ms. Hockbein had successfully satisfied the conditions of her probation and was no longer on probation, but the Defendants intentionally failed to share this information with the court or the prosecution. As a result, on June 23, 2017, a bench warrant was issued for Ms. Hockbein's arrest. Ms. Hockbein did not know anything about the missed court date or the bench warrant until July 16, 2017.

23. On Sunday, July 16, 2017, at approximately 10:00 p.m., Ms. Hockbein was pulled over by White Bear Lake Police while driving in City of White Bear Lake. The police officers advised Ms. Hockbein that there had been a warrant issued for her arrest from Pine County and that they would be arresting her, taking her into custody, and transporting her to be

7

booked in the Ramsey County Jail. Ms. Hockbein attempted to explain to the arresting officers that there must have been an error, that she has successfully completed probation, and that the Pine County case had already been closed. The arresting officers explained to Ms. Hockbein that the warrant was valid and that they would be arresting her despite the information she provided. Ms. Hockbein was then searched, handcuffed behind her back, and transported to the Ramsey County Jail. Ms. Hockbein had never been arrested in her life and the arrest caused Ms. Hockbein to suffer severe emotional trauma and distress.

24. White Bear Lake Police Officers transported Ms. Hockbein to the Ramsey County Jail and transferred her into the custody of Ramsey County Jail staff. Ms. Hockbein had never been to jail in her life and was extremely scared and traumatized. In addition, Ms. Hockbein is also claustrophobic and has an extreme fear of germs, which caused Ms. Hockbein to suffer additional emotional distress while at the jail.

25. While waiting to be booked in, an emergency situation occurred where another inmate had to be physically restrained, tased, and placed into a restraint chair. Due to this incident, Ms. Hockbein was locked inside a small cell for approximately 30-60 minutes. Observing the incident described above and then being locked inside a small cell caused Ms. Hockbein to suffer severe emotional trauma and distress.

26. Ms. Hockbein was then removed from the cell and taken through the booking procedure. During the booking procedure, Ms. Hockbein was advised that she would be strip-searched by Defendant J. Doe, a female correctional officer. Officer J. Doe knew that Ms. Hockbein was arrested on a bench warrant resulting from a failure to appear in court in a misdemeanor case. Officer J. Doe had no reason to believe that Ms. Hockbein was violent or that she was concealing drugs, weapons, or other contraband on her person. The circumstances

surrounding Ms. Hockbein's arrest also did not provide any reason for Officer J. Doe to suspect that Ms. Hockbein was a risk or concealing contraband on her person. Officer J. Doe ordered the strip-search despite the fact that Ms. Hockbein was a low-risk inmate and despite the fact that there was no probable cause or reasonable suspicion to suspect that Ms. Hockbein was concealing contraband.

27. Officer J. Doe then took Ms. Hockbein to a different area and ordered Ms. Hockbein to remove all of her clothes and place them into a plastic bag. Ms. Hockbein followed the command and removed all of her clothing and placed them in the bag, as ordered. Ms. Hockbein was now standing nude before Officer J. Doe.

28. Next, Officer J. Doe, while standing in close proximity to Ms. Hockbein, ordered Ms. Hockbein to lift her arms; Ms. Hockbein did as ordered and lifted her arms while nude in front of Officer J. Doe. Next, Officer J. Doe ordered Ms. Hockbein to lower her arms and lift her breasts; Ms. Hockbein did as ordered and lowered her arms and lifted her breasts while nude in front of Officer J. Doe.

29. In addition to the generally invasive and embarrassing nature of the strip-search, Ms. Hockbein was menstruating at the time of her arrest. When Ms. Hockbein removed her underwear, she also had to remove her sanitary pad, which contained menstrual discharge. Officer J. Doe did eventually provided Ms. Hockbein a set of jail clothes, underwear, and a sanitary pad. The strip-search procedure caused Ms. Hockbein to suffer shame, embarrassment, humiliation, invasion of privacy, and severe emotional trauma and distress.

30. After the strip-search and booking procedures were completed, Ms. Hockbein was taken to a cell where she would spend the night. Ms. Hockbein was placed in a two-bunk cell and Ms.

Hockbein was assigned the upper bunk. Ms. Hockbein was housed with another female inmate who was undergoing heroin withdrawal at the time and occupying the lower bunk.

31. Once inside the cell, Ms. Hockbein was experiencing severe stress and anxiety and felt humiliated, dehumanized, and embarrassed. There was no ladder inside the cell to get to the upper bunk and, as a result, Ms. Hockbein was unable to get into the upper bunk. Ms. Hockbein stood on her feet for a while and then decided to rest on the floor since she could not get to the upper bunk. Ms. Hockbein then pulled the mattress from the upper bunk and placed it on the cell floor. The floor of the cell was filthy and stained with blood. The sheets Ms. Hockbein was provided were also dirty and stained. These accommodations caused Ms. Hockbein to suffer feelings of severe anxiety and disgust as well as severe emotional trauma and distress.

32. The next day, on July 17, 2017, Ms. Hockbein was picked up by the Pine County Sheriff's Office and transported to the Pine County Jail. Ms. Hockbein was then detained at the Pine County Jail overnight.

33. The next day, on July 18, 2017, Ms. Hockbein was taken to court for the alleged probation violation hearing. During the hearing, Ms. Hockbein explained that she had paid her court-ordered payment on June 8, 2017, prior to the imposed due date of June 12, 2017. The judge then dismissed the alleged probation violation and ordered Ms. Hockbein to be immediately released. Ms. Hockbein was then taken back to Pine County Jail and released from custody shortly after.

34. As a result of the arrest, Ms. Hockbein missed work and had to tell her supervisor at work that she had been arrested and spent two nights in jail. In addition, information about the warrant and arrest was published online by Ramsey County, Pine County, and the Pine

County Pioneer. The online Pine County Pioneer publication remains on the internet and available to the public. An internet search using Ms. Hockbein's first and last name produces a first-page result to the Pine County Pioneer publication which states that Ms. Hockbein was arrested on a warrant in July of 2017. Ms. Hockbein also had to share the fact that she had been arrested and spent time in jail with her family.

35. As a result of the Defendants' actions described above, Ms. Hockbein suffered loss of freedom and liberty, severe emotional trauma and distress, nightmares, general fear and insecurity, fear of driving, fear of leaving the house, stress, anxiety, depression, shame, humiliation, embarrassment, invasion of privacy, damage to reputation, lost wages, and future medical expenses.

## CLAIMS FOR RELIEF

### COUNT 1: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE AND FALSE ARREST AGAINST DEFENDANTS CHRISTIANSEN AND TUVE

36. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

37. Based on the above factual allegations, Defendant Christiansen and Tuve, through their actions, acting under the color of state law, violated Plaintiff's constitutional right to remain free from unreasonable seizures under the Fourth Amendment to the United States Constitution when they, under penalty of perjury, deliberately and/or recklessly included false statements and/or omitted truthful statements in their probation violation report. But for these false statements and/or omissions, no probation violation hearing would have been scheduled and no warrant would have issued for Plaintiff's arrest.

38. As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

**COUNT 2: 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATIONS AND RECKLESS INVESTIGATION AGAINST DEFENDANTS CHRISTIANSEN AND TUVE**

39. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

40. Based on the above factual allegations, Defendants Christiansen and Tuve, through their actions, acting under the color of state law, violated Plaintiff's Fourteenth Amendment right to substantive due process of law when they (1) recklessly investigated the alleged probation violation against Plaintiff, (2) intentionally and/or recklessly and/or with deliberate indifference falsified the probation violation report under penalty of perjury to fabricate evidence against Plaintiff, and (3) intentionally and/or recklessly and/or with deliberate indifference ignored and withheld exculpatory evidence from the court, prosecution, and in their probation violation report, all for the purpose of having Plaintiff falsely charged with a probation violation based on allegations that the Defendants knew to be false. The Defendants' actions were outrageous and are conscious-shocking.

41. As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

**COUNT 3: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEIZURE AND FALSE ARREST AND FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATIONS AND RECKLESS INVESTIGATION AGAINST PINE COUNTY**

42. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

43. Prior to July of 2017, Defendant Pine County developed and maintained policies and/or customs exhibiting deliberate indifference towards the constitutional rights of persons prosecuted in Pine County, which caused the violations of Plaintiff's constitutional rights.

44. It was the policy and/or custom of Defendant Pine County to inadequately supervise and train its employees, including the individual Defendants, thereby failing to adequately prevent and discourage further constitutional violations on the part of its employees.

45. Based on the facts presented herein, Defendant Pine County had a policy and/or practice and/or custom of unlawfully filing false probation violation reports and allegations under penalty of perjury in court.

46. As a result of these policies/practices/customs and lack of training, employees of Pine County, including the individual Pine County Defendants, believed that their actions would not be properly monitored by supervisory employees and that misconduct would not be investigated or sanctioned, but would be tolerated.

47. These policies and/or practices and/or customs and lack of training were the cause of the violations of Plaintiff's constitutional rights alleged herein.

### COUNT 4: MALICIOUS PROSECUTION AGAINST DEFENDANTS CHRISTIANSEN, TUVE, AND PINE COUNTY

48. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

49. Based on the above factual allegations, the Defendants committed malicious prosecution when they intentionally and with malice caused Plaintiff to be prosecuted for a probation violation without probable cause and without reasonable belief that the prosecution will succeed. The prosecution terminated in Plaintiff's favor when all probation violation charges against Plaintiff were dismissed. Defendant Pine County is vicariously liable to Plaintiff for the malicious prosecution committed by Defendants Christiansen and Tuve.

50. As a result of these violations, Plaintiff suffered damages as aforesaid.

## COUNT 5: NEGLIGENCE AND NEGLIGENCE PER SE AGAINST DEFENDANTS CHRISTIANSEN, TUVE, AND PINE COUNTY

51. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

52. Based on the above factual allegations, the Defendants carried out a negligent investigation against Plaintiff, and this negligence caused Plaintiff to be falsely arrested, charged, and prosecuted for a probation violation.

53. Pine County Defendants' actions of making knowingly false statements to the court under penalty of perjury constitute perjury, in violation of Minn. Stat. § 609.48.

54. Defendant Pine County is vicariously liable to Plaintiff for the negligent acts and omissions of Defendants Christiansen and Tuve.

55. Defendant Pine County is also independently liable to Plaintiff under the theories of negligent retention and supervision.

56. As a result of these violations, Plaintiff suffered damages as aforesaid.

## COUNT 6: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEARCH VIOLATIONS AGAINST OFFICER J. DOE

57. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

58. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Plaintiff's constitutional rights under the Fourth Amendment to the United States Constitution by subjecting her to an unreasonable and unjustified strip-search.

59. As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

### COUNT 7: 42 U.S.C. § 1983 – FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATIONS AGAINST OFFICER J. DOE

60. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

61. Based on the above factual allegations, Defendants, through their actions, acting under the color of state law, violated Plaintiff's constitutional right to substantive due process of law by subjecting her to an unreasonable, unjustified, and conscience-shocking strip-search.

62. As a result of these constitutional violations, Plaintiff suffered damages as aforesaid.

### COUNT 8: 42 U.S.C. § 1983 – FOURTH AMENDMENT UNREASONABLE SEARCH AND FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS VIOLATIONS AGAINST RAMSEY COUNTY

63. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

64. Prior to July of 2017, Defendant Ramsey County developed and maintained policies and/or customs exhibiting deliberate indifference towards the constitutional rights of persons in the custody of Ramsey County, which caused the violations of Plaintiff's constitutional rights.

65. It was the policy and/or custom of Defendant Ramsey County to permit and/or encourage intrusive and unjustified strip-searches of low-risk inmates being booked into the Ramsey County Jail.

66. It was the policy and/or custom of Defendant Ramsey County to inadequately supervise and train its employees, including Officer J. Doe, thereby failing to adequately prevent and discourage further constitutional violations on the part of its employees.

67. As a result of these policies/practices/customs and lack of training, employees of Ramsey County, including Officer J. Doe, believed that their actions would not be properly monitored by supervisory employees and that misconduct would not be investigated or sanctioned, but would be tolerated.

68. These policies and/or practices and/or customs and lack of training were the cause of the violations of Plaintiff's constitutional rights alleged herein.

### COUNT 9: INVASION OF PRIVACY – INTRUSION UPON SECLUSION AGAINST OFFICER J. DOE AND RAMSEY COUNTY

69. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

70. Based on the above factual allegations, Defendant Officer J. Doe invaded Plaintiff's privacy by intruding upon her seclusion and private affairs, and Defendants' intrusion would be highly offensive to a reasonable person. Defendant Ramsey County is vicariously liable for the actions of its employees.

71. As a direct and proximate result of this invasion of privacy, Plaintiff suffered damages as aforesaid.

### COUNT 10: NEGLIGENCE AGAINST DEFENDANTS OFFICER J. DOE AND RAMSEY COUNTY

72. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

73. Based on the above factual allegations, the Defendants negligently subjected Plaintiff to an unjustified strip-search. Defendant Ramsey County is vicariously liable to Plaintiff for the negligent acts of Officer J. Doe.

74. Defendant Ramsey County is also independently liable to Plaintiff under the theories of negligent retention and supervision.

75. As a result of these violations, Plaintiff suffered damages as aforesaid.

## RELIEF REQUESTED

**WHEREFORE, the Plaintiff requests that this Court grant the following relief:**

a.  Issue a declaratory order stating that Defendants Pine County and Ramsey County maintain unconstitutional policies/practices/customs.

b.  Issue an order for injunctive relief ordering Defendants Pine County and Ramsey County to revise and/or strike all unconstitutional policies/practices/customs and to provide adequate corresponding training for county employees.

c.  Issue an order granting Plaintiff judgment against Defendants, finding that Defendants violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution and that Defendants are liable to Plaintiff for all damages resulting from these violations;

d.  Issue an order granting Plaintiff judgment against Defendants, finding that Defendants committed malicious prosecution, invasion of privacy, and negligence under Minnesota state law and that Defendants are liable to Plaintiff for all damages resulting from these violations;

e.  Award of compensatory damages to Plaintiff against all Defendants, jointly and severally;

f.  Award of punitive damages to Plaintiff against all Defendants, jointly and severally;

g.  Award of reasonable attorney's fees and costs to Plaintiff pursuant to 42 U.S.C. § 1988;

h.   Award of such other and further relief as this Court may deem appropriate.

**THE PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**


THE LAW OFFICE OF ZORISLAV R. LEYDERMAN

Dated: <u>November 27, 2017</u>          By: <u>s/ Zorislav R. Leyderman</u>
                                        ZORISLAV R. LEYDERMAN
                                        Attorney License No. 0391286
                                        Attorney for Plaintiff
                                        The Law Office of Zorislav R. Leyderman
                                        222 South 9th Street, Suite 1600
                                        Minneapolis, MN 55402
                                        Tel: (612) 876-6626
                                        Email: zrl@ZRLlaw.com